UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
SADEEQ ALI,

                Plaintiff,

                                         ORDER
     -against-                           16-CV-3691-KAM-SJB

MIKE POMPEO,[1] ET AL.,

                Defendants.
------------------------------------------------------------- x

**BULSARA, United States Magistrate Judge:**

      Plaintiff Sadeeq Ali ("Ali") brought this Administrative Procedure Act ("APA")

action against Mike Pompeo, Karen A. Pizza, and the U.S. Department of State ("State

Department") to challenge the January 2014 revocation of his United States passport.

Before the Court are successive motions to compel discovery filed by Ali.  These motions

seek, in one form or another, discovery intended to expand the current administrative

record proffered by Defendants.  Ali contends that although this is an APA action, where

judicial review is circumscribed and is limited to review of the decision and record

proffered by a defendant agency, the State Department has either acted in bad faith or

provided an incomplete record to the Court.  For the reasons stated below, the motions

to compel (Dkt. Nos. 40 & 51) are denied.

<u>Procedural Background</u>

      This litigation first began in September 2015, when Ali filed a complaint, before

the Honorable Brian M. Cogan, asserting claims under the APA; Ali dismissed the action

voluntarily without prejudice.  (*See* Case No. 15-CV-5107, Dkt. Nos. 1 & 9).  He then filed

---

[1] Mike Pompeo is substituted for Rex Tillerson, who had been substituted for
John Kerry, as the defendant.  *See* Fed. R. Civ. P. 25(d).

suit again, on July 1, 2016, bringing a claim for a declaratory judgment.  (Dkt. No. 1).

Several months later, he filed an amended complaint asserting claims under 8 U.S.C. §

1503(a) and seeking a declaratory judgment under 28 U.S.C. § 2201 that he is a United

States citizen.  (Amended Complaint dated September 28, 2016, Dkt. No. 8).  After a

change of counsel, Ali sought leave to file a Second Amended Complaint.  (Motion to

Amend/Correct/Supplement Amended Complaint dated September 15, 2017, Dkt. No.

21).  The proposed Second Amended Complaint sought to challenge two things: *first*,

Ali's January 2014 passport revocation; and *second*, the January 2016 denial of his

passport renewal application.  This Court granted Ali's motion for leave in part, and

denied it in part.  As to the January 2014 passport revocation:

> The State Department concluded that Mr. Ali made "false statements of
> material fact" in his passport application . . . and pursuant to 22 C.F.R. §
> 51.62(a)(2) his passport was revoked. . . .  Notably the revocation was not
> made pursuant to 22 C.F.R. § 51.62(b), which is a revocation based upon
> the State Department's conclusion "that the bearer of the passport is not a
> U.S. national."  In other words, the State Department did not revoke the
> passport of Plaintiff because he was not a U.S. national, but rather because
> he had fraudulently obtained the document.

*Ali v. Tillerson*, No. 16-CV-3691, 2017 WL 7048809, at *3 (E.D.N.Y. Nov. 21, 2017).

Because the January 2014 revocation was based on alleged fraud, and a hearing was

held on the revocation, Ali was entitled to challenge the State Department's revocation

in federal court via the APA.  *Id.* (collecting cases).  As for the January 2016 denial of

Ali's passport renewal application, the State Department's denial was based on a

conclusion that "Plaintiff did not have a claim to U.S. Citizenship and Plaintiff was not

qualified to claim U.S. citizenship under the provisions of the Immigration and

Nationality Act."  *Id.* at *4 (quotations omitted).  That is, it was a denial of a passport on

the ground that Ali was not a U.S. national.  *Id.*  Where a passport renewal is denied on

2

that ground, a plaintiff must bring any challenge pursuant to 8 U.S.C. § 1503(a) ("Denial of rights and privileges as national; (a) Proceedings for declaration of United States nationality.").  However, no action may be brought under the APA.  *Ali*, 2017 WL 7048809, at *4.

This Court, therefore, permitted Ali to file his Second Amended Complaint, but only to the extent it sought relief under the APA for Ali's January 2014 passport revocation.  *Id.*  To the extent the proposed Second Amended Complaint sought to use the APA to challenge his January 2016 passport renewal denial, it could not go forward. Ali filed a Second Amended Complaint, consistent with the Court's order.  (Second Amended Complaint dated December 4, 2017, Dkt. No. 30).  It alleged that: (1) the January 2014 passport revocation was inconsistent with the APA's burden of proof (5 U.S.C. §§ 702 & 706(2)); (2) Defendants' reliance on an improperly obtained statement from Ali violated the Fifth Amendment and the APA (5 U.S.C. §§ 702 & 706(2)); (3) Defendants failed to provide adequate notice and opportunity to challenge the passport revocation (5 U.S.C. §§ 702 & 706(2)); (4) Defendants' decisions were arbitrary and capricious (5 U.S.C. §§ 702 & 706(2)); and (5) the passport revocation was inconsistent with the APA's agency adjudication procedures (5 USC §§ 554, 557, 702 & 706(2)).  (*Id.* ¶¶ 54-78).  The Second Amended Complaint sought the following:

> 1. An [o]rder holding unlawful and setting aside Defendants' decision to uphold the revocation of Plaintiff's passport;
>
> 2. An [o]rder requiring Defendants to reinstate Plaintiffs passport and return it to him;
>
> 3. A judgment declaring that Defendants' policies, practices, acts, and omissions described herein violated Plaintiff's rights under the United States Constitution, the APA, and 8 U.S.C. § 1504 . . . ;

4. A judgment declaring that when Defendants or their agents confiscate a U.S. Citizen's passport on suspicion that it was obtained fraudulently, illegally or erroneously under 8 U.S.C. § 1504(a), the confiscation constitutes a deprivation of liberty under the Fifth Amendment immediately triggering due process requirements, and that failure to afford due process is unlawful, in excess of statutory authority, and unconstitutional;

5. A judgment declaring that, after a hearing convened pursuant to 21 C.F.R. § 51.70 *et seq.*, Defendants may only affirm a passport revocation if the revocation is supported by clear and convincing evidence presented at the hearing, because a passport revocation involves a significant deprivation of liberty;

6. A judgment declaring that Defendants must conduct passport revocation hearings in accordance with the Administrative Procedure Act rules of formal adjudication, as set forth in 5 U.S.C. §554 et seq. [sic]; [and]

7. Plaintiff's reasonable costs and attorneys' fees pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and/or any other applicable statute or regulation[.]

(*Id.*, Prayer for Relief, at 20-21). It did not seek a declaration that Ali was a United States citizen. Since the filing of the Second Amended Complaint, Ali has not sought leave to amend to, for example, bring a claim under 8 U.S.C. § 1503 regarding his January 2016 application or seek a declaratory judgment that he is a United States citizen.

On February 2, 2018, Ali filed a motion to compel "supplementation of the administrative record." (Dkt. No. 40 ("Pl.'s Feb. 2 Br.")). In that motion, Ali acknowledged that he was challenging the January 21, 2014 revocation of his passport, which he alleged was effectuated by Brian Phelps, Vice Consul of the U.S. Embassy in Sana'a. (*Id.* at 1). The motion sought materials "considered, relied on, made in conjunction with, underlie, or explain" that decision. (*Id.*). Specifically, it sought "all documents and investigative reports created in and relating to both the investigation

leading to Mr. Ali's January 2014 passport revocation and the revocation itself" and depositions (written and oral) of Diplomatic Security Service Agent Louis Orozco and Vice Consul Brian Phelps.  (*Id.* at 5).

Following the filing of the February 2 motion, Defendants produced and filed a supplemental certified administrative record.  (Notice dated February 9, 2018, Dkt. No. 41; Memorandum in Opposition re Motion to Compel dated February 9, 2018, Dkt. No. 42 ("Def.'s Feb. 9 Br.") at 1).  Defendants previously filed an initial administrative record on January 22, 2018.[2]  Defendants argued that in light of the supplemental record, the motion to compel was moot.  (Def.'s Feb. 9 Br. at 13).  A certification accompanied both record submissions.  Regina Ballard, Division Chief, Law Enforcement Liaison Division, Office of Legal Affairs, Passport Services Directorate, Bureau of Consular Affairs, United States Department of State certified that:

> The enclosed documents comprise the existing certified administrative record relating to Plaintiff's May 14, 2014 passport revocation hearing for [Ali's passport].  The administrative record consists of documents that were before the Deputy Assistant Secretary, Hearing Officer and/or between counsel for Plaintiff and Defendant as a part of the May 14, 2014 revocation.[3]

(US 311; *see also* Letter dated March 20, 2018, Dkt. No. 50 at 2 ("[T]he enclosed supplemental certified administrative record consists of documents that were before the

---

[2] The administrative record is comprised of documents found at Dkt. Nos. 36, Ex. A, and 50, Ex. A.  Dkt. No. 36, Ex. A is consecutively paginated as US 1 - US 311, and subsequent references to "US" are references to this record.  Dkt. No. 50 consists of 25 additional non-Bates numbered pages.

[3] On July 7, 2014 the State Department adopted the June 11, 2014 recommendation of hearing officer Florence G. Fultz.  Fultz's recommendation was that the State Department's January 2014 decision to revoke Ali's passport should be upheld.  (*See* US 308).  The Court finds it unnecessary for the purposes of deciding the motions to compel which of these actions, if any, constitute "final" agency action under the APA.

Director of the Office of Legal Affairs and Law Enforcement Liaison when making the

decision to revoke [Ali's] U.S. passport[.]")).

Ali replied on February 16, 2018, arguing that despite the supplemental record

submission, the "record before the Court [was] insufficient for this Court to conduct a

meaningful review of Mr. Ali's passport revocation." (Reply to Response to Motion re

Motion to Compel, Dkt. No. 45 ("Pl.'s Feb. 16 Reply") at 2). Ali alleged that the

supplemental record lacked "the Adjudicating Officer's 'notes' and 'referral.'" (*Id.* at 4).

Ali concluded by requesting "limited discovery":

> (1) The deposition of agency employees involved with the creation, implementation, participation in the State Department's proxy denaturalization program in general and in regards to Mr. Ali;
>
> (2) Written interrogatories regarding the creation, implementation, participation in the State Department's proxy denaturalization program in general and in regards to Mr. Ali;
>
> (3) Request for production and inspection of documents regarding the creation, implementation, participation in the State Department's proxy denaturalization program in general and in regards to Mr. Ali; [and]
>
> 4) Requests for admission of facts regarding the regarding the creation, implementation, participation in the State Department's proxy denaturalization program in general and in regards to Mr. Ali[.]

(*Id.* at 9). On March 9, 2018, a hearing on the motion to compel was held. (*See*

Transcript of Proceedings, Dkt. No. 49). The Court granted the parties an opportunity

to submit any supplemental authorities and argument in connection with the motion to

compel.

Asserting that the agency certification was deficient, (Supplemental Motion,

dated March 23, 2018, Dkt. No. 51 ("Pl.'s Mar. 23 Br.")), Ali argued that the agency's

submission lacked "any statement that [the record] consists of ***all*** documents that were

before the decisionmaker[.]" (*Id.* at 1-2) (emphasis in original). Ali, therefore, renewed

his request for the same discovery he sought in his February 16 filing.  (*See id.* at 5-6; *supra* at 6).  Defendants responded on April 4, 2018.  (Memorandum in Opposition re Supplemental Motion to Compel, Dkt. No. 52 ("Def.'s Apr. 4 Br.")).

<div align="center">Discussion</div>

I.    <u>Supplementation of the Record and the APA Record Rule</u>

In an APA action, the district court may "compel agency action unlawfully withheld or unreasonably delayed[,]" or "hold unlawful and set aside agency action, findings, and conclusions[.]"  5 U.S.C. § 706 ("Scope of Review").  A court may set aside those agency actions "found to be . . . [among other things] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or] contrary to constitutional right, power, privilege, or immunity" or "unsupported by substantial evidence[.]"  *Id.*  In so doing, the court "shall review the whole record[.]"  *Id.*  This review is cabined by what is referred to as at the "Record Rule."  Under the Record Rule, "[g]enerally, a court reviewing an agency decision is confined to the administrative record compiled by the agency when it made the decision."  *Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997).  "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court."  *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985).  As such, the "'focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'"  *Id.* at 743 (quoting *Camp v. Pitts,* 411 U.S. 138, 142 (1973)).  "The rationale behind the record rule is that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, should not conduct a *de novo* trial, review materials not before the agency when the

decision was made, or substitute its opinion for that of the agency." *Tummino v. Torti*,

603 F. Supp. 2d 519, 542-43 (E.D.N.Y. 2009) (citation and quotations omitted),

*amended sub nom. Tummino v. Hamburg*, No. 05-CV-366, 2013 WL 865851 (Mar. 6,

2013).

    The exceptions to the Record Rule are limited. *First,* "when there has been a

strong showing in support of a claim of bad faith or improper behavior on the part of

agency decisionmakers," an "extra-record" investigation may be warranted. *Nat'l*

*Audubon*, 132 F.3d at 14. *Second*, record supplementation is appropriate "where the

absence of formal administrative findings makes [extra-record] investigation necessary

in order to determine the reasons for the agency[]" decision. *Id.* But in either case, the

Court must be mindful that "[s]upplementation of the administrative record is the

exception, not the rule." *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps*

*of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006).

    When permitted, the discovery should not transform the litigation into one

involving all the liberal discovery available under the Federal Rules. *Int'l Jr. Coll. of*

*Bus. & Tech., Inc. v. Duncan*, 937 F. Supp. 2d 202, 204-05 (D.P.R. 2012) ("[T]he

narrowness of the APA action for judicial review weighs heavily against discovery[.]"),

*aff'd,* 802 F.3d 99 (1st Cir. 2015). Rather, the Court must permit only that discovery

necessary to effectuate the Court's judicial review, *i.e.* review the decision of the agency

under Section 706. *Citizens to Pres. Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420

(1971) ("[S]ince the bare record may not disclose the factors that were considered or the

Secretary's construction of the evidence it may be necessary for the District Court to

require *some* explanation[.]") (emphasis added), *abrogated on other grounds Califano*

*v. Sanders*, 430 U.S. 99 (1977); *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973) (per curiam)

("If . . . there was such failure to explain administrative action as to frustrate effective judicial review, the remedy was not to hold a *de novo* hearing but, as contemplated by *Overton Park*, to obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision *as may prove necessary*[.]") (emphasis added); *e.g.*, *Milanes v. Chertoff*, No. 08-CV-2354, 2008 WL 2073420, at *2 (S.D.N.Y. May 13, 2008) ("The Court expects any party seeking discovery beyond the FBI and USCIS administrative records . . . to show that the discovery it seeks is necessary for a particular reason, *e.g.*, to fill a gap in an administrative record[.]").

And more often than not, if supplementation of the record is warranted, it is accomplished via "remand to the agency," *Nat'l Audubon Soc.*, 132 F.3d at 14, not through Court-supervised discovery. *Fla. Power & Light Co.*, 470 U.S. at 744 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."); *e.g.*, *Brodsky v. U.S. Nuclear Regulatory Comm'n*, 704 F.3d 113, 124 (2d Cir. 2013) ("[W]e remand the matter to the district court with instructions for it in turn to remand to the NRC so that the agency may . . . supplement the administrative record to provide an explanation, with supporting affidavits or findings of fact[.]").

Thus, to summarize, to obtain the discovery he now seeks, Ali would have to establish either bad faith or that with the current record the Court could not review the reasons for the decision to revoke Ali's passport. If such a showing could be made, Ali would still have to demonstrate that the discovery sought was limited to effectuating judicial review under Section 706, and also show that this Court should conduct the discovery, as opposed to remanding the case to the State Department to conduct any additional factfinding or inquiry.

A.  Bad Faith

A court will not "ascribe . . . nefarious motives to agency action as a general matter." *Estate of Landers v. Leavitt*, 545 F.3d 98, 113 (2d Cir. 2009).  Consequently, the bad faith exception to the record rule requires plaintiff to make a "strong preliminary showing[] of bad faith" or improper behavior by the agency.  *Nat'l Nutritional Foods Ass'n v. Food & Drug Admin., U. S. Dep't of Health, Ed. & Welfare*, 491 F.2d 1141, 1145 (2d Cir. 1974).  This is no small hurdle.  "[N]aked assertions of bad faith" are insufficient.  *Citizens Against Casino Gambling In Erie Cty. v. Stevens*, 814 F. Supp. 2d 261, 265 (W.D.N.Y. 2011).  "[A] party must make a *significant* showing— variously described as a strong, substantial, or prima facie showing—that it will find material in the agency's possession indicative of bad faith[.]"  *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (emphasis added).

Ali makes a number of assertions of bad faith to support his request for discovery. *First*, he argues that the statement he provided to State Department officials on November 12, 2013—and which was the basis of his passport revocation—was coerced and the product of improper questioning, provided without the presence of counsel, and given under circumstances suggesting impropriety.  (*See, e.g.*, Pl.'s Mar. 23 Br. at 3 (referring to "[t]he illegal and unconstitutional interrogation and coerced statement of the Plaintiff"); US 36-43 (Nov. 2013 Statement with translation)).  This allegation is similar to allegations in his Second Amended Complaint.  (Second Amended Complaint dated December 4, 2017, Dkt. No. 29 ¶ 60) ("Defendants relied on the statement illegally obtained at the Embassy in Sana'a . . . even though the administrative record established that the statement was coerced, involuntary, and not the product of a free mind or a free will.").  *Second*, he argues that the passport revocation was part of "an illegal program of

extrajudicial denaturalization of Yemeni Americans." (*E.g.*, Motion for Discovery dated January 19, 2018, Dkt. No. 34 at 1; Reply to Response to Motion re Motion for Discovery dated January 25, 2018, Dkt. No. 38 ("Pl's Jan. 25 Reply") at 1; Pl.'s Feb. 16 Reply at 2-3). Neither allegation is sufficient to establish bad faith.

    1. <u>The November 2013 Statement</u>

The November 12, 2013 written statement made by Ali, which the State Department titles a "confession" (US 37-39) is central to the January 2014 revocation of Ali's passport. In that statement, Ali admits that the person he believed to be his natural father, Hizam Naser Ali ("Hizam Ali"), was in fact his grandfather. (*See* US 205-06; US 309 ("He also stated that [Hizam Ali] is his grandfather[.]"). That admission—according to the State Department—meant that when Ali applied for a passport, he provided false information. Specifically, in his September 15, 1992 passport application Ali stated that his name was "Sadeeq Hizam Ali." (US 310). But because Hizam Ali was his grandfather, not his father, the appellation "Hizam Ali" was false. (*Id.*). And such a false statement was grounds to revoke Ali's passport. (US 181, Tr. 7:3-7 ("Based on this sworn statement, the Department reviewed the evidence before it and determined that petitioner had made a false statement of material fact and therefore revoked [his] passport on January 21st, 2014."); US 310 ("The Department acted properly in revoking [his] passport . . . because Sadeeq Hizam Ali's true identity is Sadeeq Mohamed Ali Sharooh. [He] . . . signed a sworn statement in which he admitted that his true name is Sadeeq Mohamed Ali Sharooh, not Sadeeq Hizam Ali.")).

Ali now argues that because his November 12, 2013 statement was coerced, the State Department acted in bad faith in relying on the document. That an agency relies upon a document a party believes is inauthentic, improper or fraudulently obtained does

not demonstrate that the agency has acted in bad faith.  It may be that the agency's
reliance on an allegedly coerced confession renders its decision arbitrary and capricious
or not based on substantial evidence.  *See, e.g.*, *Omar v. Kerry*, No. 15-CV-1760, 2016
U.S. Dist. Lexis 18590, at * 2 (N.D. Cal. Feb. 16, 2016) (granting Plaintiff, naturalized
Yemeni-American, summary judgment on APA claim, finding that State Department's
reliance on coerced statement, following interrogation in Yemeni embassy, to revoke
passport was arbitrary and capricious and remanding for additional hearing); *Omar v.
Tillerson*, No. 15-CV-1760, 2017 U.S. Dist. LEXIS 195394, at *14 (N.D. Cal. Nov. 28,
2017) ("[T]he Hearing Officer's determination that the government had met its burden
to show that Plaintiff's representation regarding his name was fraudulent is not
supported by substantial evidence.  To the contrary, the government has failed to show
that there is any legal basis to revoke Plaintiff's passport."); *Awad v. Kerry*, 257 F. Supp.
3d 1016, 1023 (N.D. Ill. 2016) (reversing passport revocation of Yemeni-American where
Court found State Department's decision, among other reasons, was inadequately
explained and "unsupported.").  It may also be that the State Department's decision
failed to address Ali's arguments about the coerced nature of Ali's confession but
nonetheless relied on the document, and for that reason, the revocation should be set
aside.  *Islander E. Pipeline Co., LLC v. McCarthy*, 525 F.3d 141, 150-51 (2d Cir. 2008) (a
court "deciding whether agency action is arbitrary and capricious . . . considers [among
other things] whether the agency . . . entirely failed to consider an important aspect of
the problem[.]"); *e.g.*, *Kitchen v. U.S. Dep't of Educ.*, No. 97-CV-9391, 1998 WL 614224,
at *1 (S.D.N.Y. Sept. 14, 1998) (remanding to Department of Education where plaintiff
contended that signature on promissory note was forged, and "the agency made no
findings regarding the validity of the signatures on the . . . documents[.]").  Ali can make

such arguments to the Court in the context of a motion for summary judgment.  But arguments that a decision is incorrect and should be set aside does not establish that the agency acted in bad faith.  *Smith Prop. Holdings, 4411 Connecticut L.L.C. v. United States*, 311 F. Supp. 2d 69, 84 (D.D.C. 2004) ("[T]he actions set forth by plaintiff do not demonstrate willful misconduct by the agency; rather, the allegations mainly concern the issue this Court was called upon to decide—whether the agency acted arbitrarily and capriciously, or in violation of the law.").  Or put differently, by arguing that the agency acted improperly, Ali is arguing about the merits of his APA claim; that the ultimate resolution of his case may be in his favor does not mean the Court should order discovery.  *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 315 (S.D.N.Y. 2012) ("Soundview's arguments as to bad faith consist of merits arguments as to why [the agency] purportedly, misapplied various review criteria, or misinterpreted information in the competing grant applications. . . .  However, to establish bad faith requires a strong showing; this showing is not made out by the mere fact that a court may disagree with the agency on the merits or find error, procedural or substantive, by the agency decision-maker.") (citation omitted); *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 305 F.R.D. 256, 292 (D.N.M. 2015) ("When an appellant appeals an agency's decision and argues that the normal appellate procedure should not be followed because the agency acted in bad faith, the appellant should not be able to use the patent wrongness of the agency's substantive decision as proof of the agency's bad faith."), *reconsideration denied,* No. 12-CV-0069, 2015 WL 5138286 (Aug. 26, 2015).

There is a more fundamental problem.  Ali is taking the position that his November 2013 statement was coerced.  But at the administrative hearing before the State Department, he did not dispute that Khalid Ali was his father or that Hizam Ali

was not his father.  (US 183, Tr. at 9:3-6 ("Did he know that his biologic[al] father was
not Hizam Ali?  At some point, as he's indicated, he was told that his biologic[al] father
was not Hizam Ali.")).  Ali was represented by counsel in the administrative hearing.  He
proceeded to submit affidavits attesting that his belief that Hizam Ali was his father was
an honest mistake based on the fact that Hizam Ali had raised him.  (US 69-72).  Ali's
defense at the hearing was that he was under a mistaken belief as to his parentage, and
when he told the State Department in a passport application—that HIzam Ali was his
father—he was not making a knowingly false statement.  (*See* US 113 (Ali's Pre-Hearing
Submission) ("Ali . . . at all relevant times believed that he was the legal son of Hizam
Ali, and therefore when he made his passport application in 2010, he believed he was
answering truthfully."); *id.* at US 184, Tr. at 10:6-10 ("[E]verybody agrees who his
biological father is, but you have to go to his state of mind and did he believe that his
legal or official father was exactly as he put on his documents[?]")).  Whatever bad faith
may have existed—and Ali certainly argued at the administrative hearing that his
underlying confession was coerced and should not be considered—it is difficult to use
that to permit Ali to conduct discovery, when the product of that bad faith—Ali's signed
statement—contains certain facts that Ali does not dispute.

In reaching the conclusion that discovery should not be permitted, it is significant
that Ali has proffered nothing to support his claim of bad faith.  "Since courts may
inquire outside the agency record when plaintiffs make a strong showing of agency bad
faith or improper behavior, plaintiffs must be permitted to introduce evidence necessary
to make this threshold showing—evidence that is unlikely to ever appear within the four
corners of the official administrative record."  *Earth Island Inst. v. Evans*, 256 F. Supp.
2d 1064, 1078 n.16 (N.D. Cal. 2003) (citations and quotations omitted).  "[A]llegations

of bad faith must be based on hard facts[.]" *Madison Servs., Inc. v. United States*, 92
Fed. Cl. 120, 130 (2010) (quotations omitted). "[E]vidence, and not merely counsel's
argument, must support the showing[.]" *Jarita Mesa Livestock Grazing Ass'n*, 305
F.R.D. at 291. Ali has provided nothing other than conclusory *ipse dixit* from his lawyer
to support his allegations of bad faith conduct.[4] There are no declarations or other
evidence proffered to suggest to the Court that there was bad faith action by the State
Department. Counsel's assertions are insufficient to create the record necessary to infer
there was bad faith conduct.[5]

Finally, even if the State Department acted in bad faith in relying on or even
obtaining the November 2013 statement, Ali has not demonstrated the necessary
connection between the discovery he seeks and that bad faith. Ali seeks wide ranging
discovery, including depositions. Presumably those are being sought to establish the
circumstances under which the statement was procured (although Ali makes no such
proffer). It is not clear discovery is necessary to make such argument. Parties can, and
do, challenge evidence presented during a passport revocation hearing conducted by the

---

[4] This is why Ali's reliance on *New York v. Salazar* is misplaced. In *Salazar*, the
Court permitted bad faith discovery because the plaintiff there "produced evidence" of a
conflict of interest, submitted declarations and exhibits. 701 F. Supp. 2d 224, 241-42
(N.D.N.Y. 2010), *aff'd*, 2011 WL 1938232 (Mar. 8, 2011). Ali submits nothing more than
assertion.

[5] Because the "strong showing" can be satisfied only with affirmative evidence, it
is difficult to show bad faith. But in an APA action that is the point; the APA
contemplates that discovery should be a rarity, not the rule. "The Court is aware that
such evidence is hard to develop, and it will not be available in many cases in which bad
faith exists. It could exist, however, and plaintiffs will come across it in some cases. It
would likely take either an improvidently considered public statement by [a
decisionmaker], or a whistleblower from within [the agency] coming forward and
testifying . . . [about the] bad faith. Even absent such a showing, the Plaintiffs may still
attack [the agency's decisionmaking], but must do so within the procedural confines of
the APA, which includes the administrative-record rule." *Jarita Mesa Livestock
Grazing Ass'n*, 305 F.R.D. at 294 n.16.

State Department.  *E.g.*, *Agee v. Baker*, 753 F. Supp. 373, 379 (D.D.C. 1990) ("Agee's counsel made a series of preliminary objections.  He noted that the government had made no response to his demand regarding illegally obtained evidence . . . and stated that therefore the proceedings are fundamentally defective.") (quotations omitted).  Indeed, Ali was permitted to, and in fact, did make arguments to the agency that his statement should not be relied upon.  (*See* US 293, Tr. 9:15-10:4 ("As he said in his affidavit, he was hungry.  He was tired.  He didn't write that reported confession.  He just signed it. . . .  So, I would ask that the purported confession . . . be discarded.")).  Ali could have testified at the hearing, but chose not to.  (US 14 (citing 22 CFR § 51.71(c) ("The person requesting the hearing may testify, offer evidence in his . . . own behalf, present witnesses, and make arguments at the hearing."))).  To be sure, more discovery always can lead to more facts; but the Court is operating in the context of an agency adjudication.  An agency is permitted to create—consistent with due process—procedures on how their internal hearings are to be conducted, including on the discovery that is permitted.  *Trailways Lines, Inc. v. I.C.C.*, 766 F.2d 1537, 1546 (D.C. Cir. 1985) ("[T]he conduct and extent of discovery in agency proceedings is a matter ordinarily entrusted to the expert agency in the first instance[.]").  State Department passport revocation hearing procedures do not permit depositions or the wide-ranging discovery Ali seeks.  There is no basis on an unsupported allegation of bad faith for this Court to disregard those discovery limitations.

    2.    <u>"Proxy Denaturalization"</u>

The second basis on which Ali argues the State Department is acting in bad faith—that the agency decision was part of a "proxy denaturalization program"—is

equally unavailing.  Each of the most recent requests for discovery go to this alleged

program.  Ali seeks:

> (1)    The deposition of agency employees involved with the creation, implementation, participation in the State Department's proxy denaturalization program in general and in regards to Mr. Ali;
>
> (2)    Written interrogatories regarding the creation, implementation, participation in the State Department's proxy denaturalization program in general and in regards to Mr. Ali;
>
> (3)    Request for production and inspection of documents regarding the creation, implementation, participation in the State Department's proxy denaturalization program in general and in regards to Mr. Ali; [and]
>
> (4)    Requests for admission of facts regarding the regarding the creation, implementation, participation in the State Department's proxy denaturalization program in general and in regards to Mr. Ali[.]

(Pl.'s Feb. 16 Reply at 9; *see also* Pl.'s Mar. 23 Br. at 5-6).  The problems with these

requests and the moniker "proxy denaturalization" are manifold.

*First*, there is nothing in the record to suggest that Ali has been denaturalized or

stripped of his U.S. citizenship.  The purpose of the Ali's hearing was detailed in a letter

to his then-counsel on February 24, 2014.  The letter provided:

> The sole purpose of the passport revocation hearing is to establish, in a formal setting, the basis for the Department's action and to determine whether the appropriate procedures were followed in revoking the passport.  The *only* issue for consideration and decision will be whether or not the Department satisfied the requirements or conditions of the applicable passport regulations cited as the basis for its adverse action, *not the citizenship status of your client*.  The hearing affords the adversely affected person the opportunity to review the evidence that was the basis for the revocation and to attempt to rebut the evidence.

(US 12 (emphasis in original)).  That notice was sent repeatedly to Ali's counsel.  (*e.g.*,

US 106).  The hearing conducted was not a hearing on Ali's citizenship.  And, therefore,

the agency decision at issue could not have affected Ali's citizenship status.

*Second*, the State Department—the agency defendant in this case—cannot revoke an individual's citizenship.  At one point in the hearing, the State Department's hearing officer stated that "the request for a passport is a request for a determination of citizenship[,]" (US 191, Tr. 17:4-6), *i.e.* suggesting that she and the State Department could strip someone of citizenship.  (*See also* US 193, Tr. 19:15-17 ("What has come to light here in looking at this now raises the question of whether he actually acquired U.S. citizenship.")).  That is wrong; a State Department hearing officer has no such power.  No agency has authority to strip an individual of U.S. citizenship.  As a result of the State Department officer's erroneous statements, Ali's then-lawyer had to submit a brief to the agency arguing that citizenship was outside of the scope of Ali's hearing and could not be decided by the hearing officer.  (*See* US 225).

Because "[c]itizenship is among the most momentous elements of an individual's legal status," "revocation or cancellation of citizenship may only be accomplished by a federal judicial order."  *L. Xia v. Tillerson,* 865 F.3d 643, 650 (D.C. Cir. 2017) (collecting cases).  Courts have the "independent and comprehensive role in determining citizenship."  *Ortega-Morales v. Lynch*, 168 F. Supp. 3d 1228, 1240 (D. Ariz. 2016).[6]  "If the government concludes that a naturalized citizen is not legally entitled to citizenship, it may seek to effect denaturalization either through federal criminal prosecution or a civil action in federal court."  *L. Xia*, 865 F.3d at 650.  This is true, even where the Government believes a certificate of naturalization has been obtained through

---

[6] The agency decision contains the Hearing Officer's conclusion that "it appears that [Ali] does not have a claim to U.S. citizenship under Section 301(g) of the Immigration and Nationality Act since there is no evidence that either of his biological parents were U.S. citizens when his application for a U.S. passport was submitted on September 15, 1992." (US 310).  This *dicta* is not a revocation of Ali's citizenship; nor could it be, since plenary authority to revoke citizenship is vested in the judicial branch, not an agency.

misrepresentation, fraud, or illegality.  *Id.*  And while an agency, like the Department of

Homeland Security, or the Attorney General could cancel a certificate of naturalization,

that is not a revocation or cancellation of citizenship.  *Id.* at 651.

The same is true for a passport cancellation.  To be sure a passport is a marker of

citizenship.  *Kelso v. U.S. Dep't of State*, 13 F. Supp. 2d 1, 3 (D.D.C. 1998) ("[A] passport

is proof of citizenship[.]"); *see also* 22 U.S.C. § 2705(1) (passports have the "same force

and effect as proof of United States citizenship[.]").  But its absence is not dispositive of

citizenship.  *Kelso*, 13 F. Supp. 2d at 4 ("[T]o admit that passports are evidence of

citizenship is to say nothing about whether their revocation implicates the fundamental

right of citizenship.").  And "administrative cancellation of a citizen's passport, like

administrative cancellation of a certificate of naturalization, shall 'affect only the

document and not the citizenship status of the person in whose name the document was

issued.'"  *L. Xia*, 865 F.3d at 651-52 (quoting 8 U.S.C § 1504).  "[T]he loss of a passport

itself indicates nothing about the legitimacy of one's citizenship."  *Kelso*, 13 F. Supp. 2d

at 4.

The preceding discussion illustrates two relevant points: Ali was never

denaturalized and there is no such thing as "proxy denaturalization."  Denaturalization

requires a judicial decree; one does not lose one's citizenship by default or through a *de

facto* agency process.  And the Government cannot do an end-run around the judicial

process required to strip someone of citizenship through the use of agency process:

> If the government were correct that a successful administrative challenge
> to a naturalization certificate or passport on the ground that it was
> unlawfully procured sufficed to reveal the holder's true status as a
> noncitizen, obviating any need for judicial action . . . to effect
> denaturalization, the precedents, the process provided by . . . and the
> express preservation of citizenship status in section[] 1504 . . . would be
> illusory. On the government's logic, anyone whose naturalization the

government deemed invalidly obtained would not be protected by the requirement of a court order to denaturalize, but could instead be denaturalized administratively.   No court of which we are aware has accepted the contention that, in such circumstances, judicial process is unnecessary.

*L. Xia*, 865 F.3d at 654-55 (rejecting Government's argument that because individuals "did not receive valid certificates of naturalization . . . there is no citizenship for a court to revoke[.]").  Since there cannot be such a thing as "proxy denaturalization," there is no basis to permit Ali to conduct discovery about it.

Ali repeated references to an alleged *de facto* denaturalization also misapprehends the nature of the case he has brought.[7]  He argues that absent discovery the "extrajudicial denaturalization [a]ffecting hundreds of Americans is incomprehensible and the decisions undertaken under this program is unreviewable under the record before the Court."  (Pl.'s Jan. 25 Reply at 5).  But the "proxy denaturalization program"—whatever it could possibly be—is not the matter before the Court.

This is not a class action.  It is not a denaturalization proceeding where the Government is using the fruits of "proxy denaturalization" to revoke Ali's citizenship. Nor is it an action in which Ali is seeking an affirmative judicial decree that he is a United States citizen, which would be brought under 8 U.S.C. § 1503(a) ("Proceedings for declaration of United States nationality").  Such a lawsuit might entitle Ali to the discovery he seeks.  *See, e.g.*, *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1242 (9th Cir. 1979) (Section 1503(a) action in which "[t]he Government sought discovery under Fed.

---

[7] Ali also makes other assertions that are simply not correct or are, frankly, incredible.  Plaintiff alleges that "[t]o this day, Plaintiff remains banished to the Yemen[.]" (Pl.'s Jan. 25 Reply at 6).  Ali is not banished to Yemen; indeed, he appeared in Court for a settlement conference.

R. Civ. P. 35(a) . . . [and the] district court granted the motion[.]"); *Gutierrez v. Kerry*, No. 12-CV-155, 2016 WL 7742793, at *3 (S.D. Tex. Mar. 10, 2016) (action brought pursuant to 8 U.S.C. § 1503, ordering "[limited] discovery" including deposition of Director of Legal Affairs and Law Enforcement Liaison at the State Department's passport office). Rather this case is an action brought under the APA. As one Court has explained, in a similar challenge to a passport revocation brought by a Yemeni-American, APA claims are limited in scope:

> Plaintiff argues that "a declaratory judgment regarding Plaintiff's citizenship will do nothing to address the discriminatory policy that Defendants uphold against Yemeni-Americans seeking to travel or renew their passports." That may be so, but plaintiff is not seeking redress for this putative policy nor has she brought a discrimination claim based on her national origin or religion. Plaintiff's complaint is limited to a challenge to the only final agency action she identifies—the denial of her passport renewal—under section 706(2)(a) of the APA[.]

*Alsaidi v. U. S. Dep't of State*, No. 17-CV-0465, 2018 WL 953329, at *5 (D.D.C. Feb. 20, 2018) (citations omitted). Should Ali prevail on his claim that, for example, the State Department's revocation was not supported by substantial evidence, then the case would be remanded to the agency. *E.g.*, *Awad*, 257 F. Supp. 3d at 1023 ("[T]he revocation of Awad's passport is set aside, and the matter is remanded to the State Department for additional investigation or explanation. In so holding, the court does not suggest that the State Department could not have properly determined that Awad made false statements in his passport application; the court holds only that the record and the agency's explanations to date do not adequately support its finding that he did so."). The label "proxy denaturalization," therefore, is inapposite to Ali's lawsuit, does not demonstrate bad faith, and is not a basis to order discovery.

II.     The "Whole Record"

Ali also argues that the administrative record before the Court is incomplete, and Defendants should be required to produce additional documents.  "[A]bsent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity, that it properly designated the administrative record." *Pac. Shores*, 448 F. Supp. 2d at 5. "Once an agency presents a certified copy of the complete administrative record to the court, the court presumes that the record is properly designated." *Id.*; *Brodsky v. U.S. Nuclear Regulatory Comm'n*, 507 F. App'x 48, 52 (2d Cir. 2013) (court must "afford deference to the agency's determination" of the record).  To overcome that presumption, the party seeking discovery must put forth "concrete evidence to show that the record was not properly designated." *Pac. Shores*, 448 F. Supp. 2d at 6.  That is, it "must identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record." *Id.*

Ali's arguments about completeness fall into two categories.  *First*, he argues that there are general categories of documents that Defendants must include in the administrative record.  (*E.g.*, Pl.'s Jan. 25 Reply at 3 ("The record should include *all* documents the Department of State *considered* throughout the process, including the work of subordinates who made recommendations to the decision makers, rather than the single coerced statement[.]") (emphasis in original)).  *Second*, he identifies a number of specific documents he believes are referenced in the current record that should have been included.  Neither argument has merit.

A.  General Categories of Documents

The broad swath of documents that Ali seeks—whether as described as "proxy denaturalization" documents, (Pl.'s Feb. 16 Reply at 2), those of other "decision maker[s]," (Pl.'s Feb. 2 Br. at 2), or for "consular level documents"—are only discoverable if Ali has some basis to believe that they affected the decision under the review.  "[R]eview is to be based on the full administrative record that was before the [decisionmaker] at the time he made his decision." *Overton Park*, 401 U.S. at 420.  To be sure, "if the agency decisionmaker based his decision on the work and recommendations of subordinates, those materials should be included as well." *Amfac Resorts*, 143 F. Supp. 2d at 12.  "The exception [requiring supplementation] may be applied only in circumstances where documents were considered by decision-makers at the agency . . . but were omitted from the administrative record." *State of N.Y. v. Shalala*, No. 93-CV-1330, 1996 WL 87240, at *6 (S.D.N.Y. Feb. 29, 1996).  Ali has not demonstrated that any of the materials he believes should be in the record were considered by the State Department decisionmakers.  Ali's demand that the Government "produce all documents that were before the Special Agent, the Vice Counsel, and the Counsel Chief and not the Director of the Office of Legal Affairs and Law Enforcement[,]" (Pl.'s Mar. 23 Br. at 2), mistakes argument for evidence.[8]  He just speculates that such documents exist and that they must have been considered by the hearing officer or decisionmakers who revoked Ali's passport.  That is insufficient to make the strong showing that the record is incomplete.  *See, e.g.*, *Pac. Shores*, 448 F.

---

[8] By listing these various individuals Ali suggests that he is entitled to each of the documents that he or she may have considered.  Not so.  Ali would have to show that these individuals were the final agency decisionmakers or if they were not decisionmakers, the information that was before them was also before the final agency decisionmakers.  Ali's papers do not make either showing.

Supp. 2d at 6 ("[I]t is not enough for Pacific Shores to state that the documents were before the entire Corps, but rather it must instead prove that the documents were before the Corps' decisionmaker(s)."); *Shalala*, 1996 WL 87240, at *6 ("New York's assertion that the documents should be considered merely because they were 'within the knowledge of [the] agency' must be rejected[.]").  And as explained above, relying on "proxy denaturalization" as a reason why the record should be supplemented is a factual and legal nonstarter; it certainly is not a valid basis on which to conclude that the record is incomplete.

Ali's argument is basically that there must be other documents that the State Department is withholding, and that the State Department may not be trusted to the compile the administrative record.  The law, however, cannot just infer "nefarious" conduct in the compilation of the record.  *Estate of Landers*, 545 F.3d at 113.  Indeed, an agency is entitled to deference—a presumption of "regularity"—that it has properly compiled the record, and placed before the Court the documents that were before the agency decisionmaker.  And to rebut that presumption, Ali must offer "concrete evidence;" his conjecture is simply not enough.[9]  *E.g.*, *Citizens Against Casino Gambling In Erie Cty. v. Stevens*, No. 09-CV-291S, 2012 WL 2405195, at *6 (W.D.N.Y. June 23, 2012) ("Plaintiffs have not successfully rebutted this presumption of completeness.  Their concerns notwithstanding, they have not pointed to any gap in email communications, or the M-Opinion record generally, that would suggest non-

---

[9] Ali also argues that because the certification does not contain the word "all" it must mean certain documents have been excluded.  (Pl.'s Mar. 23 Br. at 1-2).  This again is the same kind of speculation, devoid of evidence, that fails to rebut the presumption of regularity afforded an agency's compilation of the record.

duplicative emails were inadvertently or intentionally excluded.  Accordingly, to the extent their motion seeks to 'complete' the record, it is denied.").

B.  Specific Documents

Ali argues that the following documents are missing from the record, and should be included.  *First*, he argues that the interrogation he endured "occurred pursuant to a criminal investigation" that is referred to in the record, and that the record from that investigation should be produced.  (Pl.'s Feb. 16 Reply at 3).  In a similar vein, he argues that the reference to "fraud indicators" in the record, and documents related to those "fraud indicators" should be produced.  (*Id*. at 4).  But there is no evidence that such documents were considered in the revocation of Ali's passport.  The recommendation to uphold the revocation of Ali's passport—available at US 307-10—makes no reference to such documents.  The pre-hearing submissions to the hearing officer contains no reference to them.  (*See* US 25-43).  Nor does the transcript of the hearing.  (*See* US 175-99).  That documents in the record make reference to documents not in the record does not mean the agency's record compilation is deficient.  *See, e.g.*, *Forest Cty. Potawatomi Cmty. v. United States*, 270 F. Supp. 3d 174, 182 (D.D.C. 2017) (denying supplementation of administrative record where "there [was] simply no evidence that the Federal Defendants actually considered the[ ] referenced documents . . . [and] the mere fact that portions of these documents were cited within other documents . . . is [not] enough to show that they themselves were considered.").

*Second*, he argues that the record is "devoid of the Adjudicating Officer's 'notes' and 'referral.'"  (Pl.'s Feb. 16 Reply at 4).  Ali puts "notes" and "referral" in quotation marks to suggest he is referring to something in the record produced that refers to such items.  The Court can find no such reference.  A speculative suggestion that there must

be "notes" missing from the administrative record is just that: speculation. *Stevens*, 2012 WL 2405195, at *7 ("Plaintiffs' assumption is not evidence[.]").  And from such speculation the Court cannot conclude that such items exist, were considered by the agency decisionmakers, and are absent from the record.  *See, e.g.*, *Styrene Info. & Research Ctr., Inc. v. Sebelius*, 851 F. Supp. 2d 57, 63 (D.D.C. 2012) ("[T]he party seeking supplementation must put forth concrete evidence that the documents it seeks to add to the record were actually before the decisionmakers.  Conclusory statements will not suffice; rather, the plaintiff must identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record.") (citations and quotations omitted).

Ali cites a number of cases to support his argument that he is entitled to additional discovery.  None support his position.  He selectively quotes from *Overton Park* to argue that the Court is obligated to conduct a "thorough, probing, in-depth review" and a "searching and careful" analysis of the record.  (Pl.'s Feb. 16 Reply at 3).  The language "thorough" and "probing" appears in *Overton Park* in a section dealing with the merits of the APA claim—not whether discovery is warranted—and where the Supreme Court rejected petitioner's request for *de novo* review of the agency decision.  *See* 401 U.S. at 415-16 ("[T]he Secretary's decision is entitled to a presumption of regularity.  But that presumption is not to shield his action from a thorough, probing, in-depth review.  The court is first required to decide whether the Secretary acted within the scope of his authority.") (citations omitted).  What *Overton Park* does say about discovery is the standard explained above—that before discovery may be permitted, a party must demonstrate the existence of bad faith.  *Id*. at 420 ("Of course, such inquiry into the mental processes of administrative decisionmakers is usually to be avoided. . . .

[T]here must be a strong showing of bad faith or improper behavior before such inquiry may be made.") (citation omitted).[10]  Ali has failed to demonstrate the existence of such bad faith.

He also cites to cases that involve the Freedom of Information Act ("FOIA") and the obligations that an agency has under FOIA to demonstrate the thoroughness of its search for documents.  (*See* Pl.'s Feb. 16 Reply at 6 (citing to *Weisberg v. DOJ*, 627 F.2d 339 (D.C. Cir. 1978) (FOIA case seeking documents about President Kennedy assassination))).  This is not a FOIA case; these authorities are inapposite to an APA action.[11]  Similarly, cases involving the National Environmental Policy Act ("NEPA") are inapposite, because NEPA is a unique federal statute whose lessons cannot be broadly applied to other agency decisions.[12]  *Nat'l Audubon*, 132 F.3d at 14-15 ("Deviation from this 'record rule' occurs with more frequency in the review of agency NEPA decisions than in the review of other agency decisions. . . .  This occurs because NEPA imposes a

---

[10] Ali's argument that courts have overturned agency decisions inconsistent with its own regulations is misplaced.  (*See* Pl.'s Feb. 16 Reply at 7-8).  This argument, like many of Ali's contentions, go to the merits of his claim, and do not establish the necessary prerequisite for discovery in an APA action.  In addition, Ali cites no State Department regulation; a conclusory allegation that regulations exist and were violated by Defendants, (*id.* at 8), is insufficient.

[11] Plaintiff misapprehends *City Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 600 F.2d 681 (7th Cir. 1979), which he quotes for the proposition that an agency cannot issue "formal abracadabra" (Pl.'s Feb. 16 Reply at 7) as its decision.  *Id.* at 693. The reference to abracadabra reflected the Court of Appeals' inability to understand the basis of the agency's decision.  The record reflected "little more than that a decision has been made and what that decision was."  *Id.* at 683.  But the remedy for the lack of reasoning was to remand to the agency for additional explanation, not to order discovery in district court.  *Id.* at 693 ("[T]he judgments are vacated with instructions to the district court to remand the cases to the Board for a clarification of its decisions."). As with many of the cases cited by Ali, the case deals with the ultimate merits of the APA claim, not whether discovery should be permitted.

[12] *See*, *e.g.*, Pl.'s Mar. 23 Br. at 1 (citing to *City of Dallas v. Hall*, 2007 WL 3257188 (N.D. Tex. Oct. 29, 2007).

duty on federal agencies to compile a comprehensive analysis of the potential environmental impacts of its proposed action, and review of whether the agency's analysis has satisfied this duty often requires a court to look at evidence outside the administrative record.") (citation omitted).

At the end of the day, Ali would typically be entitled to discovery, but he has chosen the wrong litigation vehicle.  An APA case is a circumscribed limited proceeding where judicial review is limited to the certified record provided by the agency.  For these reasons, the motions to compel discovery (Dkt. Nos. 40 & 51) are denied.

In light of the denial of the motions to compel, and the submission of the certified record, the Court concludes that discovery is now closed.  The deadline for taking the first step in any dispositive motion practice before the Honorable Kiyo A. Matsumoto is **June 15, 2018**.

<div style="margin-left: 40%;">

SO ORDERED.

*/s/ Sanket J. Bulsara May 2, 2018*
SANKET J. BULSARA
United States Magistrate Judge

</div>

Brooklyn, New York